(45 Misc. 371)

### ROSS v. HEALY et ux.

(Supreme Court, Appellate Term. November 10, 1904.)

1. DOG—OWNERSHIP—EVIDENCE—SUFFICIENCY.
　　Evidence in an action involving the ownership of a dog examined, and *held* not to support a verdict for plaintiff.

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

Action by Mahala Ross against Patrick J. Healy and wife. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before FREEDMAN, P. J., and BISCHOFF and FITZGERALD, JJ.

Victor J. Dowling, for appellants.
Pierre I. Brown, for respondent.

FREEDMAN, P. J. The question involved in this case arises over the ownership of a dog. The defendant P. J. Healy in March, 1899, purchased in San Francisco a dark-red Irish setter, then about six weeks old. This dog remained in his possession in San Francisco until September 3, 1902. On September 1, 1902, defendant purchased a collar, had it marked "P. J. Healy," and placed it upon the dog's neck. This dog, with the collar still around his neck, was brought to this city by the defendants, and was in their possession, wearing the same collar, down to March, 1903. The

plaintiff procured her dog in 1895, then about two months old. She claims to have lost this dog about October 27, 1902, and from that time until November 4, 1903, she did not see it. The foregoing facts are admitted by stipulation of the parties, and were read in evidence upon the trial; and the plaintiff also admitted that the defendants had their dog continuously in their possession from October 26, 1902, until November, 1903, at their residence, near where the plaintiff then found it. The proof shows that on November 4, 1903, the plaintiff saw the dog in the street, and took it to her home. The defendants, missing their dog, advertised for its return; and on December 4, 1903, the defendant's wife, as she testified, saw the dog on the street. She called him, he came up to her, and, after some conversation with a maid who had the dog in charge, she took the dog home with her. The plaintiff's dog at the time of the trial was some months over eight years of age, while defendants' dog was under five years of age.

The case was stubbornly contested, but nearly all the testimony was taken without objection. The plaintiff produced eight witnesses, including herself and husband, who testified to more or less acquaintance with the dog owned by the plaintiff; and while some were quite certain, and others less so, they all practically declared that the dog, then present in court, belonged to the plaintiff. On the contrary, the defendant produced 11 witnesses, including the defendant and his wife, who testified to an equal acquaintance with the defendant's dog, and were equally positive that the dog in court was the defendant's.

Upon the question of the age of the dog in court—a very material point in issue—of the two witnesses for the plaintiff sworn as experts, one placed the dog's age at about six years, and the other at more than six years, but under seven years. As, according to plaintiff's witnesses, her dog must have been over eight years of age at the time of the trial, this testimony was more favorable to the defendant's contention than the plaintiff's. Three expert witnesses for the defendant testified; one placing his age at from three and a half to four years, and the other two at under five years. None of the defendant's witnesses testify to ever seeing but one dog at Healy's, or in his possession, and Healy and his wife declare positively that they never had but one. The domestic having the dog in charge at the time the defendant's wife claimed it testified that on the morning of December 4th she took the dog out from No. 440 West End avenue, without his leash; that he ran up to the corner and crossed over; that defendant's wife was coming around the corner, and called the dog to her; that, after some conversation, Mrs. Healy took the dog by the collar, and led him until she got to the corner of Eighty-First street and West End avenue, when she released the dog; that he ran beside Mrs. Healy until she reached her home, No. 317 West Eightieth street. It was also shown by the defendant's wife and by Mrs. Slattery, the wife of the landlord of the defendant, and living in the same house, that the dog exhibited great delight when he reached the home of the defendants, that he ran from room to room in the house, and that he

recognized the several members of the family and the children of Mrs. Slattery. The testimony on the part of the defendant also establishes the fact that the defendant had a dog in his possession in September, 1902, nearly two months before plaintiff's dog was lost; that a dog was continuously in his possession down to November, 1903, when plaintiff picked it up, claiming it as her own. If, therefore, the plaintiff's claim is correct, the defendants must have had two dogs at their residence in this city from September, 1902, down to March, 1903—one being the dog brought by them to New York in September, and the other the dog lost by plaintiff October 26th, 1902—and they must, some time after March, 1903, have changed the collar from the neck of their own dog to that of plaintiff's. That the defendants are thus guilty of larceny and perjury ought not to be believed, based upon the testimony of plaintiff and her witnesses, who concededly had not seen the dog for over one year, and who might, therefore, have been honestly mistaken as to the identity of the dog in question, and as many of whom merely testified to their "best knowledge" that the dog in court was the plaintiff's dog. One of plaintiff's witnesses, an employé in a meat market near Eighty-Second street, testified that he had seen the Ross dog daily for three years or over, from 1900, by reason of the plaintiff coming into the market and trading there, although plaintiff testified that her dog was taken to Normandie by the Sea in May, 1901, and remained there all summer, and that she "never traded there [the market aforesaid] only occasionally, when it was convenient for me to go in."

The judge instructed the jury that if they found that the dog in suit was "not over five years of age, or thereabouts, you will naturally find for the defendants. If you find that it is an older dog—seven or eight years of age, or thereabouts—you will find for the plaintiff." And when defendants' counsel asked the court to charge that "unless, from all the testimony, the jury should be satisfied that the animal in controversy is eight years and upwards of age, their verdict must be for the defendants," the court substantially refused, saying he "had covered that." As before stated, the plaintiff's dog, by her own testimony, was some months over eight years of age at the time of the trial, and the testimony that the dog produced before the jury at the time of the trial was considerably less than that age was wholly in defendants' favor; and therefore the charge of the judge that "if you find that it is an older dog [than five years]—seven or eight years, or thereabouts"—was not based upon testimony given in the case, and in a case like this might have easily misled the jury.

The record is very voluminous; the testimony taken, together with the judge's charge to the jury, consisting of 184 typewritten pages. It has been carefully examined, and bearing in mind that upon the plaintiff falls the burden of proof, and that, to sustain the verdict rendered, she must show by a preponderance of evidence that her claim is just and her contention right, it is quite clear that, had the jury carefully weighed the evidence, and given due regard to the probabilities to be reasonably deducted there-

from, the verdict would have been for the defendants. The interests of justice certainly demand that a new trial be had.

Judgment reversed. New trial ordered, with costs to the appellants to abide the event. All concur.